**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DENNIS T. MANGANO, PH.D., M.D.,

        Plaintiff,              No. C-05-2836 PJH

    v.

                       **ORDER GRANTING MOTION**
UNITED STATES OF AMERICA,    **TO DISMISS**
        Defendant.
_____/

    Defendant's motion to dismiss the complaint pursuant to Federal Rule of Civil

Procedure 12(b)(1)[1] came on for hearing on October 19, 2005, before this court.  Plaintiff

appeared through his counsel, Daniel Marino, and defendant appeared through its counsel,

Jocelyn Burton.  Having read the parties' papers and considered carefully their arguments and

the relevant legal authority, and good cause appearing, the court hereby GRANTS defendant's

motion to dismiss for lack of subject matter jurisdiction for the following reasons.

**INTRODUCTION**

    This is essentially a wrongful termination case.  Plaintiff Dennis T. Mangano, Ph.D.,

M.D. ("Mangano"), brought claims for intentional infliction of emotional distress and intentional

interference with right to practice a lawful profession against his former employer, the San

Francisco Veterans Affairs Medical Center (SFVAMC).  Mangano alleges that the SFVAMC

fired him in retaliation for his reports in 1997 to the SFVAMC Medical Center Director that

certain doctors were removing patient care equipment from operating rooms and using it to

run experiments on pigs and sheep, then returning the equipment to the operating room

_____

[1] At the hearing, defendant also brought a motion to strike the Supplemental Declaration of Sarah E. Kleven filed by plaintiff on October 18, 2005.  Local Rule 7-3(d) provides that "once a reply is filed, no additional memoranda, papers or letters may be filed without prior court approval."  Defendant filed its reply October 5, 2005.  Mangano did not seek leave of court to file the supplemental declaration, and therefore, pursuant to Local Rule 7-3(d), defendant's motion to strike is granted.

without sterilizing it. Mangano further alleges that he was fired in retaliation for complaints he filed with the Quality Assurance office about the inadequacy of patient handling in the hospital and that his reputation and ability to practice medicine has been permanently impaired as a result of defendant's actions.

Defendant United States has filed a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Defendant argues that Mangano's common law tort claims, brought under the Federal Tort Claims Act (FTCA), are preempted by the Civil Service Reform Act (CSRA), which provides the exclusive remedies for plaintiff's complaints. Mangano disagrees and contends that the narrow application of the CSRA to employees in his position does not constitute the type of comprehensive statutory scheme used to justify the preemptive effective of the CSRA and therefore does not preclude his claims. He also claims that because he is unable to challenge certain actions of the SFVAMC under the CSRA, the FTCA must be available to him as an alternative avenue of relief.

### BACKGROUND

In his complaint, Mangano alleges the following facts:

Mangano was appointed to a part-time position as a staff anesthesiologist at the SFVAMC under 38 U.S.C. § 7405(a)(1)(A) in 1991. Having practiced and taught medicine at the SFVAMC from 1977 until 2001, Mangano spent 14 years as Director of the Surgical Intensive Care Unit and chaired the Emergency Medical Care Committee for 7 years. Mangano specialized in high-risk cardiac surgery and was recognized as an international authority in his field, as well as a "world-renowned clinical researcher in the field of Perioperative Medicine." Cmplt. ¶ 11.

Mangano alleges that prior to 1997, he received consistently high ratings in his performance reviews, and that he had founded a non-profit research organization dedicated to the study of stroke and heart attacks.

In 1997, as Mangano was preparing for surgery, he discovered that his Service Chief, Dr. Cason, had removed a machine Mangano needed from the operating room and taken it to

the animal lab. Mangano later observed Dr. Cason attempting to return the machine to the operating room without having cleaned it thoroughly. Mangano objected to Dr. Cason's effort to return the machine and refused to use it until it had been sterilized properly. Shortly thereafter, Mangano learned that it had been a common practice of Dr. Cason and other physicians at SFVAMC to use equipment on veterans after using it on the animals without cleaning it thoroughly.

Following this incident, Mangano filed a formal complaint. Although an Administrative Board of Inquiry recommended that Dr. Cason be disciplined for what the Board termed "unethical" conduct, he was not sanctioned and was instead promoted to Chair of the Operating Room Committee.

Almost immediately after he filed his complaint against Dr. Cason, Mangano began receiving notice of unwarranted formal complaints against him by Dr. Cason, including that he was late for work, that he used his business telephone for personal calls, that he improperly switched on-call responsibilities with other physicians, and "countless other minor issues." Cmplt. ¶ 36. Mangano also asserts that Dr. Cason inappropriately criticized Mangano's handling of an ICU patient, and provided false testimony to a Privilege and Tenure Committee investigating a personal complaint against Mangano.

Mangano further alleges that in 2000, an unwarranted Quality Assurance (QA) proceeding was initiated against him following an incident in which another doctor improperly opened a patient's airway in preparation for surgery. Mangano states he was given 24 hours to explain his own improper management of the incident, despite the fact that he was not the one who performed the procedure.

Mangano contends that these and other examples of mismanagement and abuse led to his termination and deprived him of the ability to perform clinical research and practice medicine. He asserts the loss of employment opportunities and loss of past and future income, as well as significant property damage.

The government has filed a motion to dismiss for lack of subject matter jurisdiction

under Fed. R. Civ. P. 12(b)(1), asserting that Mangano's claims under the FTCA are precluded by the CSRA.

**DISCUSSION**

**A.    Legal Standard**

Federal courts are courts of limited jurisdiction, possessing only that power authorized by the United States Constitution and Congressional statutes. See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). The court is under a continuing obligation to dismiss an action whenever it appears the court does not have jurisdiction, and federal courts are presumed to lack jurisdiction over civil causes of action. See Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983); Kokkenen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). The burden of establishing jurisdiction rests with the plaintiff. Kokkenen, 511 U.S. at 377.

The nature of the plaintiff's burden depends on whether the jurisdictional challenge is facial or factual. In a facial attack, the defendant challenges the sufficiency of the allegations in the complaint. In such a case, the court construes the allegations of the complaint in the light most favorable to the plaintiff and presumes the allegations are true. The court may dismiss the action only if the claim does not "arise under" federal law or the Constitution, there is no case or controversy, or the claim is not found in any jurisdictional statute. See Baker v. Carr, 369 U.S. 186, 198 (1962). The court may grant leave to amend a complaint where jurisdictional allegations are defective as to form. Telluride Management Solutions, Inc. v. Telluride Investment Group, 55 F.3d 463, 466 (9th Cir. 1995).

In a factual attack (also known as a "speaking motion"), the defendant "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). If the defendant brings such a motion, the court may consider extrinsic evidence beyond the allegations of the complaint and may determine the facts in order to evaluate the merits of the jurisdictional claim. See Thornhill Publ'g Gen. Tel & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979). An evidentiary

hearing must be held where a Rule 12(b)(1) motion requires the court to resolve issues of credibility or disputed material facts; those issues cannot be resolved on the basis of declarations and discovery alone. Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial (2004) § 9:85.1. The court has discretion to order an evidentiary hearing before trial, or postpone the motion until trial. Id.

This case involves a facial attack, as the defendant does not address the truth of Mangano's allegations, but asserts that his claims are barred by the CSRA.

**B.     Defendant's Motion to Dismiss Under Rule 12(b)(1)**

Defendant brings a motion to dismiss for lack of subject matter jurisdiction, arguing that Mangano's claims for intentional infliction of emotional distress and intentional interference with right to pursue a lawful profession under the FTCA are barred by the CSRA. Defendant asserts that the conduct Mangano complains of constitutes a "prohibited personnel practice" that falls squarely within the CSRA section preventing federal employees from taking a personnel action against another employee for reporting violations of any law, rule or regulation. 5 U.S.C. § 2302(b)(8). The government argues that because Mangano is required to apply, and has in fact applied, for administrative relief under the CSRA, he may not bring his action under the FTCA.

Mangano contends that this court must deny the government's motion to dismiss for essentially three reasons. First, Mangano observes that because he was not employed by SFVAMC as a full-time civil servant, he is not subject to the CSRA[2]. Second, he asserts that even if the CSRA does apply to him in part, the narrow application of certain provisions of the statute to Mangano does not constitute the kind of comprehensive statutory remedy used to prevent civil servants from pursuing claims under the FTCA. Finally, Mangano contends that at least some of the actions taken by the SFVAMC were not "prohibited personnel practices"

---

[2] Mangano's opposition to defendant's motion to dismiss addressed this argument at length. At the hearing on the motion to dismiss, however, plaintiff focused almost exclusively on his argument that he is entitled bring claims under the FTCA for actions that were not "prohibited personnel practices" within the meaning of § 2302. Nonetheless, this court will address each of Mangano's arguments in turn.

within the meaning of 5 U.S.C. § 2302, and thus he should be able to bring claims based on those actions under the FTCA.

**C.    Analysis**

**1.    The Civil Service Reform Act Applies to Mangano, Even Though He Was Employed as a Part-Time Physician**

Generally speaking, the civil service laws of Title 5 do not apply in the same way to many part-time, non civil service employees as they do to full-time civil service employees. See 38 U.S.C. § 7405(a).  In fact, under 38 U.S.C. 7405(a)(1)(a), the Veterans Health Administration (VHA) may employ part-time physicians "without regard to civil service or classification laws, rules, or regulations. . . ."

Mangano asserts that the Ninth Circuit has "expressly determined that the civil service laws of Title 5 do not apply to part-time, non civil-service employees like Dr. Mangano."  Pl.'s Opp'n at 3:15 -16 (citing Orloff v. Cleland, 708 F.2d 372 (9th Cir. 1983)).  In Orloff, a former part-time physician employed by a Veterans' Administration Hospital brought suit against the VA Administration, alleging that the VA terminated his employment in violation of the Due Process Clause of the Constitution and the Veterans' Preference Act.  708 F.2d at 374-375. Observing that Congress amended the statute pertaining to appointment of Veterans' Health Administration personnel in 1962, the Ninth Circuit found that the "plain language of the statute states that civil service laws shall not apply to part-time physicians employed by the VA. . . ." Id.

However, eleven years after Orloff was decided, in 1994, Congress amended the statute defining "employee" under the CSRA to add a new section (f).  Section (f) provides that for purposes of various sections under the CSRA, including section 2302 on prohibited personnel practices, "employees appointed under chapter 73 or 74 of title 38 shall be employees."  5 U.S.C. § 2105(f).

Mangano was appointed under chapter 74 of title 38.  As a result, several sections of the CSRA, including section 2302 on prohibited personnel practices, apply to Mangano.  In

6

fact, Mangano admits that he is an employee for purposes of the sections listed in section

2105(f) and acknowledges that he has claims pending before the Merit Systems Protection

Board (MSPB). Pl.'s Opp'n at 6:19-20. Therefore, Mangano's claim that the CSRA does not

apply to him is unavailing.[3]

### 2. Mangano's Argument That He Has Limited Access to CSRA Remedies Still Does Not Allow Him to Bring Claims Under the FTCA

Alternatively, Mangano argues that even though the CSRA applies to him through

section 2105(f), the application is limited and therefore does not bar his tort claims under the

FTCA. Mangano contends that the remedies available to him are nominal in relation to the

broad scheme of procedures available to other federal employees under the CSRA[4].

Because the comprehensive nature of the CSRA is what justifies precluding FTCA claims,

and he does not have access to all remedies under the CSRA, Mangano asserts that he

should be able to bring this action.

The CSRA allows federal employees to challenge their supervisors' "prohibited

personnel practices" through an administrative remedial system. See 5 U.S.C. § 2302;

Mahtesian v. Lee, 406 F.3d 1131, 1134 (9th Cir. 2005); Kinney v. United States, 242 F.3d

382, *1 (9th Cir. 2000). If the alleged action is prohibited by the CSRA, then the

administrative procedures provided for in the CSRA are an employee's only remedy and the

claim cannot be resolved through the FTCA. Saul v. United States, 928 F.2d 829, 835-43 (9th

Cir. 1991) (holding that state tort claims were preempted by the CSRA); Rivera v. United

States, 924 F.2d 948 (9th Cir. 1991) ("To permit FTCA claims to supplant the CSRA's

remedial scheme would defeat [Congress'] purpose [in enacting the CSRA]."); Orsay v. United

---

[3] Mangano also argues that the only cases the government cited in its motion to dismiss involved civil servants unlike Mangano. However, as the government points out in its reply, this simply is not true. Kennedy v. United States Postal Service, 145 F.3d 1077, 1078 (9th Cir. 1998), involved a postal worker, not a civil servant.

[4] For example, Mangano observes that full-time physicians employed by the VA are entitled to certain administrative procedures not afforded part-time employees, including advance written notice of disciplinary actions, grievance procedures, and the opportunity to challenge major adverse actions such as a quality assurance procedure. Pl.'s Opp'n at 7 n. 2.

States Department of Justice, 289 F.3d 1125, 1128 (9th Cir. 2002) (determining that federal employees must challenge "prohibited personnel practices" through the CSRA and not the FTCA).

The Ninth Circuit has emphasized repeatedly that even where the CSRA does not provide a remedy for a particular claim, it bars actions by federal employees under the FTCA. Saul, 928 F.2d at 843 ("Even where the CSRA provided Saul no remedy, preemption of his work-related tort claims is necessary to fulfill congressional intent."); Andersen v. United States, 8 F.3d 25, *4 (9th Cir. 1993) (denying jurisdiction despite the "absence of any kind of judicial review or remedy under the CSRA for certain classes of employees or categories of claims."). In these cases, courts have explained that claims under the FTCA are precluded because the CSRA was designed to provide a comprehensive and exclusive remedial scheme for claims of federal employees related to their conditions of employment. Rivera, 924 F.2d at 951; Saul, 928 F.2d at 842-43. Therefore, even if Mangano is not entitled to the same protections and remedies as other employees might be under the CSRA, he cannot bring his claims under the FTCA.

Mangano further alleges that because the CSRA prevents him from bringing an action to challenge his lengthy suspension and termination under Chapter 75 of Title 5, he should be entitled to proceed under the FTCA. Mangano argues that in every other Ninth Circuit case where FTCA claims have been preempted under the CSRA, the plaintiffs, unlike him, have had access to Chapter 75 remedies.

However, as with his assertions about lack of access to notice and grievance procedures, Mangano's lack of access to Chapter 75 is not proof that he should be allowed to bring claims under the FTCA, but evidence of Congressional intent as to which employees are entitled to judicial review under the CSRA. In a case analogous to this one, the Supreme Court held that nonpreference federal employees could not obtain judicial review under the Tucker Act, despite the fact that the CSRA sharply circumscribed the available remedies for such employees. United States v. Fausto, 484 U.S. 439, 455 (1988).

8

In <u>Fausto</u>, a former employee of the Fish and Wildlife Service sought backpay for what he alleged was wrongful suspension. <u>Id.</u> at 442. Even though he was exempted from judicial review under Chapter 75 by the CSRA, the Court found that his claims were precluded. <u>Id.</u> at 455. As the <u>Fausto</u> court observed in language pertinent to this case:

> the absence of provision for these employees to obtain judicial review is not an uninformative consequence of the limited scope of the statute, but rather manifestation of a considered congressional judgment that they should not have statutory entitlement to review for adverse action of the type governed by Chapter 75 [of the CSRA, 5 U.S.C. § 7511].

<u>Fausto</u>, 484 U.S. at 448-49. Just because Mangano is not entitled to bring a claim under Chapter 75 of the CSRA does not mean the statute is not comprehensive and precisely drawn. Rather, the fact that Mangano is barred from specific claims or remedies under the CSRA as a part-time physician is evidence of Congressional intent, not Congressional oversight. Therefore, Mangano's inability to pursue his claim under Chapter 75 does not weigh in favor of a right to proceed under the FTCA.

**3.     Mangano's Argument That Certain Actions Taken By the SFVAMC Are Not "Prohibited Personnel Practices" Fails**

Finally, Mangano argues that because he is unable to challenge certain specific actions of SFVAMC personnel under the CSRA, the FTCA must be open to him as an avenue of relief.

The controlling factor in determining whether the CSRA precludes a claim is whether the conduct can be challenged as a "prohibited personnel practice." <u>See</u> <u>Saul</u>, 928 F.3d at 841. In his opposition to the defendant's motion to dismiss, Mangano contends that at least some of his claims do not fall under the "prohibited personnel practices" proscribed in section 2302 of the CSRA. For example, he asserts that his challenges to the abuse of quality assurance procedures at the hospital are not actionable under the CSRA because the Director of the Medical Center, Sheila Cullen, has said that actions such as placing Mangano on administrative leave, preventing him from entering the hospital, and barring him from

9

treating patients are not adverse personnel actions[5]. Pl.'s Opp'n at 8 n. 4. Rather, Mangano

points out that Cullen has described the quality assurance process as a fact-finding

mechanism for investigating incidents as opposed to a "means of discipline or adverse

personnel action." Cullen Dep. at 38, Ex. C.

What constitutes a "personnel action," however, is defined broadly under the CSRA,

and encompasses eleven different categories. Included among those categories are (1) a

"disciplinary or corrective action," (2) "a decision concerning pay, benefits, or awards," and (3)

"any other significant change in duties, responsibilities, or working conditions." 5 U.S.C. §

2302(a)(2)(A)(iii), (ix), & (xi). The Ninth Circuit has explicitly rejected a "cramped

construction"of the term "personnel action," and has mandated that courts apply an inclusive

interpretation of the concept. Orsay, 289 F.3d at 1129.

Mangano argues that the government has taken the position in this case that the quality

assurance investigation initiated by SFVAMC staff resulting in Mangano's suspension does

not fall within any category of personnel action as defined by § 2302. He asserts defendant is

estopped from arguing otherwise because Dr. Cullen stated she did not view putting Mangano

on administrative leave, excluding him from the VA hospital premises and denying him access

to patients as adverse personnel actions. Pl.'s Opp'n at 8 n. 4[6].

However, while it is true Dr. Cullen remarked in her deposition that she did not consider

those actions to be disciplinary or adverse personnel actions as she understood them, she

expressed no opinion as to whether they might be challenged as "prohibited personnel

practices" under § 2302. What Mangano fails to note is that the broad construction that the

Ninth Circuit has given "personnel action" encompasses more than disciplinary proceedings,

---

[5] Unfortunately, Mangano does not make clear in his papers precisely which (if any) other actions taken by the SFVAMC fall outside the "prohibited personnel practices" of the CSRA. At the hearing on the motion to dismiss, Mangano argued that the gravamen of his complaint is the abuse of the quality assurance process by individuals within SFVAMC who sought to destroy Mangano's career and interfere with his right to practice his profession, but he has not specified which particular actions he believes are excluded from § 2302 (other than the placement on administrative leave, exclusion from hospital premises and denial of ability to treat patients).

[6] Nowhere in its papers or oral argument does the government take this position.

10

and includes "any other significant change in duties, responsibilities, or working conditions." See 5 U.S.C. § 2302(a)(2)(A)(xi). See Orsay, 289 F.3d at 1129.

Furthermore, the Merit Systems Protection Board has affirmed, contrary to Mangano's assertion, that placing an employee on administrative leave constitutes a "personnel action" under § 2302(a)(2)(A)(xi). Special Counsel v. IRS, 65 MSPR 146, 148 (1994). Denying Mangano access to the hospital facilities and putting him on administrative leave certainly created a change in his working conditions, and preventing him from treating patients constituted a significant change in his duties and responsibilities. Those few cases in which courts have allowed federal employees to pursue judicial remedies outside the CSRA are those in which the claims did not concern "personnel actions" described in section 2302. See Brock v. United States, 64 F.3d 1421 (9th Cir. 1995) (employee's FTCA claims were not barred under CSRA because supervisor's rape and repeated sexual abuse of employee did not involve a category of personnel actions and the acts were not perpetrated with respect to supervisor's authority); Collins v. Bender, 195 F.3d 1076 (9th Cir. 1999) (warrantless search of plaintiff's home was unrelated to his employment and therefore not an employment action); Orsay, 289 F.3d at 1131 (aiming a loaded weapon at employees did not fit any of CSRA's definitions of a personnel practice). In each of these cases, the court found that the actions taken by an employee's supervisor were entirely unrelated to the conditions of employment or were outside the scope of the supervisor's authority.

The actions taken in Mangano's case, by contrast, did not involve such highly personal violations so obviously attenuated from the worker's employment. Even if placing Mangano on administrative leave and preventing him from entering the hospital or treating patients were not disciplinary measures, they were actions within the scope of his supervisor's authority and related to his conditions of employment. Because these actions fit into the categories of personnel actions described in 5 U.S.C. § 2302(a)(2)(A), they constitute "personnel actions" within the meaning of § 2302.

In addition, section 2302 of Title 5 defining "prohibited personnel practices" provides,

in relevant part, that federal employees shall not:

> (8) take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of--
>
>> (A) any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences--
>>
>>> (i) a violation of any law, rule, or regulation, or
>>>
>>> (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. . . .

5 U.S.C. § 2302(b)(8).  Section 2302 also contains a "catchall" provision, stating that employees shall not take "any other personnel action" if doing so would violate any law or regulation concerning the merit system principles.  5 U.S.C. § 2302(b)(12).

Where an action taken by a government employee is a "personnel action" allegedly taken for reasons prohibited by the CSRA, it falls under the definition of a "prohibited personnel practice."  Orsay, 289 F.3d at 1129.  In Orsay, two Deputy United States Marshals brought intentional tort claims against their former employers under the FTCA and the Privacy Act.  The marshals alleged that they had filed formal complaints of misconduct by their supervisors with the United States Marshal's Internal Affairs Office and shortly thereafter were subject to an investigation and disciplinary proceeding that eventually led to their constructive suspension and discharge.

In analyzing the plaintiffs' claims, the court found that at bottom, the marshals were suggesting, as Mangano does here, that the investigative and disciplinary actions taken were initiated in retaliation for the grievances they filed regarding their supervisor's misconduct.  Id. at 1129.  The court also commented that

> [e]ven if retaliation is not the primary reason for the personnel actions that Appellants challenge, it is implicit in Appellants' complaints that the actions were unjustified.  They would therefore fall under the CSRA's general prohibition against prejudicial treatment based on "conduct which does not adversely affect the performance of the employee . . . or the performance of others."

1   Id. at 1129-30; see also Kinney, 242 F.3d at *2.

2       As with the deputy marshals in Orsay, Mangano's claims fall within these definitions of

3   "prohibited personnel practices" described in section 2302.  In the introduction of his

4   complaint, Mangano summarizes his case by stating that his former employers "set out to fire

5   him and to humiliate him because he reported unsafe practices and procedures involving the

6   medical care of Veterans." Cmplt. ¶ 1.  It is implicit from the allegations in the complaint that

7   plaintiff's tort claims arise out of decisions taken by his superiors in response to his reports

8   of unlawful and dangerous activity in the hospital.  Furthermore, Mangano's claims pending

9   before the MSPB, which contain essentially the same allegations as in his complaint, charge

10  that his supervisors retaliated against him for protected whistleblower activity.  See

11  Declaration of Barbara Konno, Exhibit I, 1-2.  These allegations constitute a claim of

12  retaliation for protected activity as described in 5 U.S.C. § 2302(b)(8).

13      However, even if Mangano is challenging the initiation of the quality assurance

14  process on a basis other than retaliation, he certainly alleges that the investigation was

15  unjustified.  In his complaint, Mangano asserts that he "brings this action for intentional

16  infliction of emotional distress and interference with right to practice a lawful profession

17  because the [SFVAMC] and its personnel, without justification, ruined his career as a

18  clinician and as a clinical researcher. " Cmplt. ¶ 1 (emphasis added).  Mangano alleges that

19  SFVAMC staff ruined his career by "among other things, abusing the quality assurance

20  process and raising unwarranted issues regarding [Mangano's] patient care."  Cmplt. ¶ 3.

21  As a result, Mangano would still be able to challenge the actions of the SFVAMC under the

22  prohibited personnel practices section of the CSRA.  See 5 U.S.C. § 2302(b)(10).

23      Finally, Mangano argues that the abuse of the quality assurance process interfered

24  with his right to practice his profession.  Another prohibited personnel practice defined under

25  § 2302 provides that an employee shall not: "deceive or willfully obstruct any person with

26  respect to such person's right to compete for employment."  5 U.S.C. § 2302(b)(4).  To the

27  extent that Mangano charges the SFVAMC's actions interfered with his right to pursue his

28

profession, he could raise a claim under section 2302(b)(4).

This court finds that because Mangano would be able to challenge the abuses he alleges in his complaint under section 2302 of the CSRA defining "prohibited personnel practices," his claims under the FTCA are barred.

**4.    Mangano's Claim for Intentional Interference with Right to Practice Lawful Profession Falls Under the FTCA's Intentional Tort Exception**

While not presented by either party in their papers or at the hearing, it appears Mangano would not be able to bring his claim for intentional interference with right to practice a lawful profession under the FTCA because of the intentional tort exception found in 28 U.S.C. § 2680(h).

Section 2680(h) of the FTCA provides that "[a]ny claim arising out of . . . interference with contract rights" is expressly exempted from the FTCA's waiver of sovereign immunity. 28 U.S.C. § 2680(h).  "When a claim falls within a statutory exception to the FTCA's waiver of sovereign immunity, the court is without subject matter jurisdiction to hear the case."  Mundy v. United States, 983 F.2d 950, 952 (9th Cir. 1993).

The FTCA bars claims for interference with prospective economic gain or advantage, "no matter what words are used to describe such a tort."  Numrich v. United States, 2001 WL 34043386, *6 (D. Or. 2001).  In Moessmer v. United States, the Eighth Circuit found that a CIA pilot's claim against the government for intentional interference with future employment was exempted under FTCA section 2680(h).  760 F.2d 236, 237 ((8th Cir. 1985).  The court held that the plaintiff's claim "for interference with prospective economic advantage is the equivalent of a claim for interference with contract rights, and thus falls within the section 2680(h) exemption."  Id.

Similarly, Mangano's claim that the actions of the SFVAMC staff tarnished his standing in the medical and research community and resulted in a loss of employment opportunities is essentially a claim of interference with prospective economic advantage.

1  Therefore, even if his claim were not precluded by the CSRA, it would be exempted from the

2  FTCA.

3                                    **CONCLUSION**

4

5          For the foregoing reasons, the court hereby GRANTS defendant's motion to dismiss

6  and motion to strike WITH PREJUDICE.  This order fully adjudicates the motions found at

   numbers 6 and 20 on the clerk's docket for this case.
7

8

9  **IT IS SO ORDERED.**

10 Dated: October 28, 2005

11                                              _____

12                                              PHYLLIS J. HAMILTON
                                               United States District Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28